UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

RICHARD CROWELL,

        Plaintiff,

v.

        Case No.  15-13825
        District Judge Arthur J. Tarnow
        Magistrate Judge R. Steven Whalen

BADAWI ABDELLATIF, *et al.,*

        Defendant.
_____/

**REPORT AND RECOMMENDATION**

On October 26, 2015, Plaintiff Richard K. Cromwell ("Plaintiff"), a Michigan Department of Corrections ("MDOC") inmate currently housed at the Ionia Maximum Correctional Facility in Ionia, Michigan, filed a *pro se* civil complaint pursuant to 42 U.S.C. § 1983, alleging Eighth Amendment violations.  Before the Court is Defendant Corizon Health, Inc. ("Corizon") and Badawi Abdellatif's ("Dr. Abdellatif's") Motion for Summary Judgment [Docket #27], which has been referred for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). For the reasons discussed below, I recommend that the motion be GRANTED, dismissing claims against these Defendants WITH PREJUDICE.

I. **FACTS**

In his complaint, Plaintiff alleges that between December 17, 2014 and June 30, 2015, he was denied medical care for his long-standing and serious conditions, which he enumerates as (1) delayed sleep syndrome, sleep apnea, and restless leg syndrome; (2) the "very painful" conditions of spinal stenosis, degenerative disc disease, and bone spurring, osteoarthritis; (3) gastrointestinal disease ("GERD"); (4) irritable bowel syndrome ("IBS"); and (5) pain from tumors. *Complaint*, *Docket #1*, pgs. 5, 7-8 of 12, Pg ID 5.

Plaintiff, stating that he was under "the [sole] care" of Dr. Abdellatif between December 17, 2014 and June 30, 2015, alleges that Dr. Abdellatif "refused . . . *all* treatment, causing [him] pain." *Id.* at 5, 8. Plaintiff alleges that Dr. Abdellatif is a "contractual employee of Corizon" and thus, Corizon is "responsible" for Dr. Abdellatif's actions. Plaintiff requests monetary and injunctive relief.

II. **STANDARD OF REVIEW**

Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R.Civ.P. 56(c). To prevail on a motion for summary judgment, the non-moving party must show sufficient evidence to create a genuine issue of material fact. *Klepper v. First American Bank*, 916 F.2d 337, 341-42 (6th Cir. 1990). Drawing all reasonable inferences in favor of the non-moving party, the Court must determine "whether the evidence

presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986). Entry of summary judgment is appropriate "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celetox Corp. v. Catrett*, 477 U.S. 317, 322 (1986). When the "record taken as a whole could not lead a rational trier of fact to find for the nonmoving party," there is no genuine issue of material fact, and summary judgment is appropriate. *Simmons-Harris v. Zelman*, 234 F.3d 945, 951 (6th Cir. 2000).

Once the moving party in a summary judgment motion identifies portions of the record which demonstrate the absence of a genuine dispute over material facts, the opposing party may not then "rely on the hope that the trier of fact will disbelieve the movant's denial of a disputed fact," but must make an affirmative evidentiary showing to defeat the motion. *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479 (6th Cir. 1989). The non-moving party must identify specific facts in affidavits, depositions or other factual material showing "evidence on which the jury could *reasonably* find for the plaintiff." *Anderson*, 477 U.S. at 252 (emphasis added). If the non-moving party cannot meet that burden, summary judgment is proper. *Celotex Corp.*, 477 U.S. at 322-23.

## III. DISCUSSION

### A. Dr. Abdellatif

Defendants argue that the "[t]he undisputed medical record shows that Dr. Abellatif and his colleagues provided Plaintiff [] appropriate treatment despite his obstreperous behavior." *Defendants' Brief,* 4, *Docket #27,* Pg ID 257. They contend that the present case, "at its crux," boils down to "a disagreement between Plaintiff and his medical providers regarding the appropriate course of treatment" and does not rise to the level of a constitutional violation. *Id.* at 5.

Prisoners have a constitutional right to medical care under the Eighth Amendment,. *Estelle v. Gamble,* 429 U.S. 97, 103 (1976). Prison officials may not act with deliberate indifference to the medical needs of their prisoners. *Id.* at 104. An Eighth Amendment claim has two components, one objective and the other subjective. *Farmer v. Brennan,* 511 U.S. 825, 834 (1994); *Comstock v. McCrary,* 273 F.3d 693, 702 (6th Cir. 2001). Under the objective component, "the plaintiff must allege that the medical need at issue is 'sufficiently serious.'" *Id.* Under the subjective component, "the plaintiff must allege facts which, if true, would show that the official being sued subjectively perceived facts from which to infer substantial risk to the prisoner, that he did in fact draw the inference, and that he then disregarded that risk." *Id.*

The record plainly contradicts Plaintiff's claim that he received *no* treatment for his multiple conditions.

The records shows that at the time of Plaintiff's December, 2014 arrival at Macomb Correctional Facility, he was receiving care for the conditions of lumbago, cervical disc disease, post laminectomy back care, sleep apnea, lipoma, GERD, and IBS, which consisted of Tylenol, magnesium hydroxide (Milk of Magnesia), Protonix, and Ultram (crushed). *Defendant's Exhibit A* at 341-346, 349, Pg ID 294. He had a "special accommodation for no work assignment" and a CPAP machine. *Id.* at 349. On December 22, 2014 Plaintiff submitted a complaint, alleging that the crushed Ultram was exacerbating his GERD; requesting Nexium instead of Protonix for GERD; stating that he was in pain; and requesting a single cell. *Defendants' Exhibit B, Abdellatif Affidavit*, ¶ 11. Dr. Abdellatif notes that Plaintiff's request for a change in pain management was subject to approval by MDOC's Pain Management Committee ("PMC"). *Id.* at ¶ 8. Plaintiff was informed on December 30, 2014 that pending an evaluation the following week, he could purchase Tylenol from the prison store. *Id.* at ¶ 15; *Exhibit A* at 355. On January 1, 2015, Plaintiff reiterated his earlier complaint regarding the crushed Ultram and was informed that "the reasoning behind the crush order" would be determined. *Id.* at ¶ 16; *Exhibit A* at 356, 359-371. The same records state that Plaintiff threatened to sue his resident unit manager and the doctor. *Id.* In the meantime, Plaintiff's complaints regarding his CPAP machine were addressed. *Id.* at ¶ 17; *Exhibit A* at 359-360, 368.

Dr. Abdellatif examined Plaintiff for the first time on January 6, 2015, noting Plaintiff's complaints of GERD, breathing problems, sleep apnea, and chronic back pain. *Id.* at ¶ 18; *Exhibit A* at 361-365. Dr. Abdellatif ruled out "constitutional symptoms," observing that Plaintiff appeared healthy and in no acute distress and noted that the condition of GERD was stable. *Id.* at ¶ ¶ 20-21; *Exhibit A* at 363-365. Despite Plaintiff's allegations of level "eight out of ten" pain, he exhibited an only slightly limited range of neck motion and did not show signs of nerve root impingement or an abnormal gait or muscle atrophy. *Id.* Plaintiff reported good results from the CPAP machine. *Id.* Based on the examination, Dr. Abdellatif found that the previous PMC recommendation of June 10, 2014 should remain in place. *Id.* Following the examination, Plaintiff complained that Dr. Abdellatif had refused to treat him for GERD, pain, sleep apnea, painful [subcutaneous] tumors, and IBS. *Id.* at ¶ ¶ 26-27; *Exhibit A* at 371, 376, 379. On January 12, 2015, Dr. Abdellatif responded to Plaintiff's requires for a renewal of a Milk of Magnesia prescription by noting that Plaintiff could purchase laxatives from the prison store. *Id.* The following day, Dr. Abdellatif again examined Plaintiff, noting that Plaintiff did not exhibit any signs of pain. *Id.* at ¶ 28; *Exhibit A* at 383. Dr. Abdellatif states that upon telling Plaintiff that the other health complaints had been addressed the week before, Plaintiff jumped out of his chair and departed, saying "screw you and I will see you in court." *Id.*

In response to a January 23, 2015 complaint by Plaintiff, Dr. Abdellatif declined to order additional or more aggressive treatment, noting that Plaintiff had not exhibited "signs and symptoms" justifying a greater level of care. *Id.* at ¶ 31. On January 30, 2015, Dr. Abdellatif discontinued the Ultram "crush order" after reviewing the chart, but advised the administering nurses to closely observe Plaintiff's medication usage. *Id.* at ¶¶ 33, 35; *Exhibit A* at 402-403. Plaintiff was again scheduled for medical care after complaining that the conditions of sleep apnea and back pain were unaddressed, but refused to come to health care until the staff procured a "specialist." *Id* at ¶ 36; *Exhibit A* at 421. Ten days later a "special needs" screening by the medical department determined that Plaintiff's level of care was appropriate. *Id.* at ¶ 37; *Exhibit A* at 423-425. Over the course of the treatment and ensuing complaints, Plaintiff continued to receive Protonix, Tylenol and Ultram. *Id.* At a February 19, 2015 appointment, Plaintiff denied complications of sleep apnea, denied abdominal pain or nausea, and did not appear to be in distress. *Id.* at ¶¶ 41, 43-44; *Exhibit A* at 429-432. His request for an increase in Ultram was denied. *Id.* Later the same month, he denied sleeping problems and continued to use the CPAP machine. Plaintiff was observed the following month obtaining distilled water for the CPAP machine. *Id.* at ¶¶ 45, 47-48; *Exhibit A* at 441, 447. The following month, Plaintiff refused to see Dr. Abdellatif, but was examined by nursing staff. *Id.* In May, 2015, his dosage of Protonix was increased and he was given a special accommodation of fiber cereal. *Id.* at ¶ 53; *Exhibit A* at 466. Plaintiff did not voice other health concerns. *Id.*

In June, 2015, Dr. Abdellatif conducted an examination, at which time Plaintiff attempted to hand him an envelope allegedly listing his ailments, to which Dr. Abdellatif responded that he should instead explain his symptoms during interview and if necessary, submit that envelope "via official channels." *Plaintiff's Brief* at 18. Dr. Abdellatif observed that Plaintiff was in no acute distress and that the lipoma was benign. *Defendants' Exhibit B,* ¶¶ 58; *Exhibit A* at 492-494. Dr. Abdellatif observed normal muscle tone and bulk and no limitation in movement. *Id.* Dr. Abdellatif found that the spinal condition had resolved and that additional pain management was not appropriate. *Id.* at ¶ 60; *Exhibit A* at 494. Dr. Abdellatif declined to recommend treatment for the benign lipoma. *Id.* He noted that Plaintiff had recently refused Protonix for the GERD condition. *Id.* He advised Plaintiff to exercise. *Id.* at ¶ 61; *Exhibit A* at 492-495. The following month, during a fire drill, he observed that Plaintiff was able to move without limitation. *Id.* at 63; *Exhibit A* at 512. The same month, another medical provider recommended no change in the current treatment plan. *Id.* at ¶ 64; *Exhibit A* at 526-528, 535. The records show that Plaintiff continued to receive treatment through the December 1, 2015 at which time he reported that he was getting a full night's sleep and otherwise "doing okay." *Id.* at ¶ 67; *Exhibit A* at 755.

The evidence shows that Dr. Abdellatif provided constitutionally adequate medical care. Even assuming that Dr. Abdellatif was negligent in declining to prescribe an increased dosage of Ultram, or agreeing to Plaintiff's request for Nexium rather than the prescribed GERD medication, medical malpractice does not rise to the level of an Eighth Amendment

violation. *See Estelle v. Gamble, supra*, 429 U.S. at 105-106 ("a complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner"). The Sixth Circuit has also observed that "[w]here a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims which sound in state tort law." *Westlake v. Lucas,* 537 F.2d 857, 860 at n. 5 (6th Cir.1976). To make out a claim of deliberate indifference, a plaintiff must show that his or her treatment was "so woefully inadequate as to amount to no treatment at all." *Alspaugh v. McConnell*, 643 F.3d 162, 169 (6th Cir. 2011). A "difference of opinion between a plaintiff and his doctor regarding his diagnosis and treatment do[es] not state an Eighth Amendment claim." *Smith v. Sator,* 102 F. App'x 907, 909 (6th Cir.2004) (citing *Estelle,* 429 U.S. at 107).

Plaintiff meets the objective prong of a deliberate indifference claim in that he has the sufficiently serious medical conditions of GERD, back pain, and IBS. However, his case falters on the subjective prong. He has shown nothing more than his disagreement with Dr. Abdellafi's course of treatment. The medical records also suggest that the suit was precipitated by a "clash of personalities" rather than the deprivation of required treatment. The fact that Plaintiff may have previously received a higher dosage of pain medication or might have been prescribed Nexium for the condition of GERD by another source is wholly

irrelevant. The issue of whether another doctor could have prescribed better treatment, or whether the treatment the Plaintiff received was the most effective treatment available is a determination this or any Court is ill-equipped to make. Rather, the issue is whether Dr. Abdellatif was deliberately indifferent to Plaintiff's pain to the extent that he provided no treatment at all.

The above-discussed evidence shows clearly that Dr. Abdellatif exercised medical judgment and that Plaintiff received continuous treatment for his pain and other conditions. That Plaintiff disagrees with that determination is beside the point. "[A] prisoner has no right to choose a specific form of medical treatment," so long as the treatment provided is reasonable, *Harrison v. Barkley,* 219 F.3d 132, 138–140 (2d Cir.2000), and "mere disagreement as to the proper medical treatment" is insufficient to state a constitutional violation. *Spruill v. Gillis,* 372 F.3d 218, 235 (3d Cir.2004) (citations omitted); *See also Perkins v. Kan. Dep't of Corr.,* 165 F.3d 803, 811 (10th Cir.1999) ("[A] prisoner who merely disagrees with a diagnosis or a prescribed course of treatment does not state a constitutional violation.").

Given these facts, no reasonable trier of fact could find in Plaintiff's favor on his Eighth Amendment claim. Defendant Dr. Abdellatif is entitled to summary judgment.

**B. Corizon**

In terms of municipal or corporate liability, Corizon, a private corporation performing a state function, is deemed a state actor or "municipality" for purposes of § 1983. *See Street*

*v. Corrections Corp. of Am.,* 102 F.3d 810, 817–18 (6th Cir.1996). However, Plaintiff's claim that Corizon "failed to properly supervise" Dr. Abdellatif, a contract employee, should be dismissed for multiple reasons. *Complaint* at 3. In *Monell v. Department of Social Services of City of New York,* 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978), the Supreme Court held that under § 1983, a municipality could not be liable on a theory of *respondeat superior*: "A municipality cannot be held liable *solely* because it employs a tortfeasor—or, in other words, a municipality cannot be held liable under § 1983 on a *respondeat superior* theory." *Id*., 436 U.S. at 691, 2036. (Emphasis in original). Plaintiff's claim that Corizon failed to supervise Dr. Abdellatif plainly states a claim of supervisory liability and is thus subject to dismissal. The *Monell* Court found that the municipality can be held liable only where the acts of individual employees represent the government's custom or policy. *Id.* at 694-695, 2037–2038. Plaintiff has made no such allegations here.

More obviously, Plaintiff has not shown the denial of his Eighth Amendment rights by the one individual Defendant, Dr. Abdellatif. As such, Corizon cannot be held liable under § 1983. *See Watkins v. City of Battle Creek*, 273 F.3d 682, 687 (2001)(question of whether an unconstitutional custom or policy existed mooted by the absence of a constitutional violation by individual defendant(s)).

### IV. CONCLUSION

For these reasons, I recommend that Defendants' Motion for Summary Judgment be [Doc. #27] be GRANTED, dismissing claims against these Defendants WITH PREJUDICE.

Any objections to this Report and Recommendation must be filed within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and E.D. Mich. LR 72.1(d)(2).  Failure to file specific objections constitutes a waiver of any further right of appeal.  *Thomas v Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *Howard v Secretary of HHS,* 932 F.2d 505 (6th Cir. 1991); *United States v Walters,* 638 F.2d 947 (6th Cir. 1981).  Filing of objections which raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation.  *Willis v Secretary of HHS,* 931 F.2d 390, 401 (6th Cir. 1991); *Smith v Detroit Fed'n of Teachers Local 231,* 829 F.2d 1370, 1373 (6th Cir. 1987).  Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Any objections must be labeled as "Objection #1," "Objection #2," etc.; any objection must recite *precisely* the provision of this Report and Recommendation to which it pertains.  Not later than fourteen (14) days after service of an objection, the opposing party must file a concise response proportionate to the objections in length and complexity.  The response must specifically address each issue raised in the objections, in the same order and labeled ad "Response to Objection #1," "Response to Objection #2," etc.

s/R. Steven Whalen  
R. STEVEN WHALEN  
UNITED STATES MAGISTRATE JUDGE

Dated:  March 8, 2017

## CERTIFICATE OF SERVICE

I hereby certify on March 8, 2017, that I electronically filed the foregoing paper with the Clerk of the Court sending notification of such filing to all counsel registered electronically. I hereby certify that a copy of this paper was mailed to non-registered ECF participants.

s/Carolyn Ciesla
Case Manager to
Magistrate Judge R. Steven Whalen
